

NUMBER 13-06-00569-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CANYON REGIONAL WATER AUTHORITY,            **Appellant,**

**v.**

**GUADALUPE-BLANCO RIVER AUTHORITY,
THE TEXAS COMMISSION ON ENVIRONMENTAL
QUALITY, AND MARGARET HOFFMAN IN HER
OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR
OF THE TEXAS COMMISSION ON ENVIRONMENTAL
QUALITY,**            **Appellees.**

### On appeal from the 353rd District Court
### of Travis County, Texas.

# O P I N I O N

### Before Chief Justice Valdez and Justices Rodriguez and Benavides
### Opinion by Chief Justice Valdez

This case originally involved a water-rate appeal that Canyon Regional Water

Authority ("Canyon Regional"), appellant, and others brought before the Texas Commission

on Environmental Quality ("the Commission"), co-appellee.[1]  In its rate appeal, Canyon Regional sought review of the rates that Guadalupe-Blanco River Authority ("Guadalupe-Blanco"), co-appellee, charged for water.  During the administrative review of the rate appeal, the parties reached an impasse regarding the interpretation of an underlying contract and the validity of the Commission's administrative rules.  Canyon Regional and Guadalupe-Blanco sought declaratory relief in district court, and the Commission moved to dismiss Canyon Regional's claims for lack of jurisdiction.  The trial court rendered judgment in favor of Guadalupe-Blanco and the Commission and taxed Canyon Regional with a portion of Guadalupe-Blanco's attorney's fees.  By five issues, Canyon Regional appeals various aspects of the judgment.  We affirm.

## I. BACKGROUND

On October 13, 1998, Canyon Regional and Guadalupe-Blanco entered into a water purchase contract in which Guadalupe-Blanco promised to provide a certain amount of untreated water to Canyon Regional.  The contract contained the following relevant provisions:

15.    Charges.

      (a)    [Canyon Regional] shall pay GBRA [Guadalupe-Blanco] for each month beginning the first month of this Water Purchase Contract through the term of this Water Purchase Contract an amount of money equal to 1/12th the product of that party's Long-Term Annual Quantity in effect during that month times the Firm Water Rate (hereinafter defined) in effect during that month.  The "Firm Water Rate" shall be the rate charged by

---

[1] This appeal involves three parties: (1) the Commission, a state agency that is responsible for implementing the constitution and laws of Texas relating to the conservation of natural resources and the protection of the environment, *see* TEX. WATER CODE ANN. § 5.012 (Vernon 2008); (2) Guadalupe-Blanco, a conservation and reclamation district, *see* TEX. CONST. art. XVI, § 59; and, (3) Canyon Regional, a special law water district.  *See id.*  Bexar Metropolitan Water District and Water Services Inc. also filed water-rate appeals and were parties in the underlying suit.  They, however, are not parties to the instant appeal.

GBRA per acre-foot of water per year for a firm water supply reserved and supplied pursuant to this Water Purchase Contract, but in any event not less than the rate charged for stored water on a firm-yield bases from Canyon Reservoir. The present Firm Water Rate is $61.00 per acre-foot per year.

. . . .

16. <u>Annual Adjustment</u>. CRWA [Canyon Regional] shall pay GBRA at its office in Guadalupe County, Texas or such other place as GBRA may designate in writing, not later than the thirty-first (31st) day of January of each year, a dollar amount equal to the product of the following: a factor of 2.0, times the Firm Water Rate in effect on December 31 of the previous year, times the number of acre-feet of water used in the previous calendar year in excess of the Total Annual Commitment applicable for that year . . . .

17. <u>Adjustment of Rates</u>.

(a) The Firm Water Rate specified in this Water Purchase Contract may be adjusted by GBRA at any time and from time to time. If GBRA desires to adjust either rate, it shall, at least sixty (60) days prior to the first day on which such adjustment is proposed to become effective, give written notice of the proposed adjustment to the parties to this Water Purchase Contract.

(b) The monthly charge to be paid for water delivery may be set and adjusted by GBRA at any time and from time to time, provided that the basis for the rate established by GBRA shall be the cost of service[,] including the debt service requirements of GBRA which were incurred in connection with the financing of the water delivery system. . . .

(c) In the event of a disagreement between GBRA and any party over any adjustment proposed by GBRA to the Firm Water Rate . . . applicable to that party, or over the setting or adjustment by GBRA of any delivery charge applicable to that party, GBRA and that party may apply by appropriate means to the TNRCC, or any agency succeeding to the rate-making jurisdiction of the TNRCC,[2] to establish a just and reasonable adjustment or charge.

---

[2] In 2002, the Texas Natural Resource Conversation Commission's name was changed to the Texas Commission on Environmental Quality. *See* 30 TEX. ADMIN. CODE § 3.2(8) (2002) (Tex. Comm'n on Environmental Quality, Definitions).

3

After executing the contract, Guadalupe-Blanco increased the firm water rate in annual increments for water from $61 an acre foot in 1998 to $92 an acre foot in 2006. In 2002 and 2003, Canyon Regional challenged the rate increases by filing rate-appeal petitions with the Commission.

The Commission referred the petitions to the State Office of Administrative Hearings for an evidentiary hearing on whether it was in the public interest to modify Guadalupe-Blanco's water rate. *See* 30 TEX. ADMIN. CODE § 291.131(b) (1994) (Tex. Comm'n on Environmental Quality, Executive Director's Review of Petition or Appeal) ("For a petition or appeal to review a rate that is charged pursuant to a written contract, the executive director will forward the petition or appeal to the State Office of Administrative Hearings to conduct an evidentiary hearing on public interest."). Canyon Regional objected to the public interest hearing on the ground that the water rate was not pursuant to the contract and that it was entitled to proceed directly to an evidentiary hearing on the rate. *See id.* § 291.131(c). The administrative law judge abated the petitions and referred the matter to district court. *Id*. § 291.131(d).

Both Guadalupe-Blanco and Canyon Regional sought declaratory relief under the Uniform Declaratory Judgment Act ("UDJA") and the Administrative Procedures Act ("APA") in district court.[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004 (Vernon 2008); TEX. GOV'T CODE ANN. § 2001.038 (Vernon 2008). Along with seeking declaratory relief, Canyon Regional sued Guadalupe-Blanco for breach of contract, arguing that paragraph 17(c) provided that the parties agreed to proceed directly to a rate-making hearing before the

---

[3] Canyon Regional and Guadalupe-Blanco filed petitions under different cause numbers in district court. On February 26, 2004, the trial court, by agreed order, consolidated the two suits.

4

Commission and that Guadalupe-Blanco breached that provision by insisting on a public interest hearing; it also sought an injunction to prohibit the Commission from conducting a public interest hearing. Both parties sought attorney's fees under the UDJA, and Canyon Regional requested attorney's fees under chapter 38 of the civil practice and remedies code. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 2008) (providing for the recovery of reasonable attorney's fees on a claim for an oral or written contract).

The Commission filed a plea to the jurisdiction, in which it argued that Canyon Regional's "contention" that "direct access to a justness and reasonableness hearing must always be given and a public interest hearing can never be required as a precondition" should be dismissed for lack of jurisdiction because that question was before the administrative law judge.

In June 2004, Canyon Regional and Guadalupe-Blanco filed cross-motions for partial summary judgment. The central issue in Guadalupe-Blanco's motion was whether Guadalupe-Blanco's rate increases were made under the contract and whether Canyon Regional's breach of contract claim was viable. Canyon Regional's motion raised similar contractual issues, but it also made statutory and constitutional arguments. Canyon Regional argued that the Commission was obligated to fix a just and reasonable rate because numerous water code provisions called for it to do so. Additionally, Canyon Regional raised a constitutional argument by claiming that requiring a public interest hearing impaired the parties' ability to enter into contracts that "waived" the public interest requirement. It cited a section of the Texas Constitution that provides that, "[n]o . . . law impairing the obligation of contracts[] shall be made." TEX. CONST. art. I, § 16.

5

On December 17, 2004, the trial court granted Guadalupe-Blanco's motion and declared that the firm water rate increases were under the contract for purposes of sections 291.128 through 291.138 of title 30 of the administrative code. The trial court also found that Canyon Regional's breach of contract claim was without merit as a matter of law. Regarding the Commission's plea to the jurisdiction, the trial court dismissed Canyon Regional's claim that a public interest hearing can never be a precondition to a rate-setting hearing when state-owned surface water is involved. The last portion of the partial summary judgment order pronounced that Guadalupe-Blanco was entitled to attorney's fees, which would be determined in the trial court's final judgment.

On July 11, 2006, the trial court rendered a final judgment that incorporated and reaffirmed the partial summary judgment of December 17, 2004. The judgment also declared that sections 291.128 through 291.138 of title 30 of the administrative code, which deal with water-rate appeals that the Commission had promulgated, were a proper exercise of the Commission's statutory authority. Although Guadalupe-Blanco sought $302,870.17 in attorney's fees, the trial court awarded it $40,000 in fees against Canyon Regional.[4] This appeal followed.[5]

## II. Discussion

This is an appeal from a judgment that was partially rendered on cross-motions for

---

[4] The trial court awarded Guadalupe-Blanco $120,000 in attorney's fees in total. In addition to taxing Canyon Regional, the trial court taxed Bexar Metropolitan Water District and Water Services, Inc., each with $40,000 in attorney's fees.

[5] This case was transferred from the Third Court of Appeals to the Thirteenth Court of Appeals under a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). "In cases transferred by the Supreme Court from one court of appeals to another, the court of appeals to which the case is transferred must decide the case in accordance with the precedent of the transferor court under principles of stare decisis if the transferee court's decision otherwise would have been inconsistent with the precedent of the transferor court." TEX. R. APP. P. 41.3.

6

summary judgment. When parties file cross-motions for summary judgment and the trial court grants one motion and denies the other, an appellate court should review the summary judgment evidence supporting each motion and determine all questions presented. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). The appellate court "should render the judgment that the trial court should have rendered." *Id*. If the trial court's order does not specify the grounds upon which it granted summary judgment, the appellate court "must affirm summary judgment if any of the summary judgment grounds are meritorious." *Id*.

## A.     "Pursuant to a Contract"

We begin our analysis of the first issue with a brief overview of the administrative rules that govern wholesale water rate appeals. To protest a wholesale water rate, the complainant files a petition with the executive director of the Commission, who forwards a complete petition to the State Office of Administrative Hearings for an evidentiary hearing before an administrative law judge. 30 TEX. ADMIN. CODE § 291.131(a). A petition that seeks review of a rate that is charged pursuant to a written contract must undergo a public interest hearing. *Id*. § 291.131(b). If the challenged rate is found to not adversely affect the public interest, then the Commission will dismiss the petition. *Id*. § 291.134(a). On the other hand, if the Commission finds that the protested rate adversely affects the public interest, then it will send the matter to an administrative law judge for an evidentiary hearing on the rate. *Id*. § 291.134(b). A petition that seeks review of a rate that is not charged pursuant to a written contract is granted an evidentiary hearing on the rate. *Id*. § 291.131(c). When there is a disagreement regarding whether the challenged rate is

pursuant to a contract, the administrative law judge is to abate the proceeding and forward the controversy to the appropriate court. *Id*. § 291.131(d).

In this case, the trial court found that the rate was charged pursuant to a contract. By its first issue, Canyon Regional argues that the trial court erred in finding that the firm water rate that is included in the contract's price calculation is a contractual rate. According to Canyon Regional, the phrase "pursuant to the contract" that is used in the administrative code's rules dealing with water rate appeals means that the contract must explicitly set forth a fixed price. If it does not, then the rate is not made "pursuant to the contract." *See id*. § 291.131. Because the contract does not provide a permanent, fixed number, Canyon Regional contends that the disputed rate is not made "pursuant to the contract," and therefore, a public interest hearing is inappropriate. Canyon Regional's interpretation of the term "pursuant," while clever, tortures its plain meaning.

We construe the Commission's administrative rules, which have the same force as statutes, in the same manner as statutes. *See Rodriguez v. Serv. Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999). Accordingly, words and phrases will be read in context and construed according to the rules of grammar and common usage. *See* TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998). While many written contracts contain a fixed price, some contracts contain a pricing scheme that is commonly known as an "open-term price." Indeed, the business and commerce code allows parties to enter into a "contract for sale even though the price is not settled" if the seller or buyer fixes the price in "good faith." *See* TEX. BUS. & COM. CODE ANN. § 2.305 (Vernon 1994). For example, Texas courts have long upheld the validity of open-term price contracts in which gasoline refiners set a sale price

to a posted price that is fairly applied to similarly-situated purchasers. *See Shell Oil Co. v. HRN, Inc.*, 144 S.W.3d 429, 436 (Tex. 2004).

The contract at the center of this dispute contains an open-term price provision that calculates the sale price of wholesale water based upon Guadalupe-Blanco's firm water rate. The firm water rate is publicly available, and Canyon Regional is provided with sixty-days notice of any change in it. Moreover, the firm water rate is charged to all of Guadalupe-Blanco's "customers." We cannot say how this contract is any different than gasoline contracts that have been upheld by other courts. *See id.* Canyon Regional's first issue is overruled.

## B.    Breach of Contract

By its second issue, Canyon Regional argues that Guadalupe-Blanco breached the contract by not "waiving" the public interest hearing requirements under the Commission's administrative rules, but instead, insisted on a hearing as the administrative rules require. Canyon Regional contends that section 17(c), which provides that in the event of a rate dispute "GBRA and [Canyon Regional] may apply by appropriate means to the TNRCC, or any agency succeeding to the rate-making jurisdiction of the TNRCC, to establish a just and reasonable adjustment or charge," obligates Guadalupe-Blanco to directly submit to a rate-making hearing. The argument is flawed in two respects.

We begin by noting that Canyon Regional's argument is not supported by a single citation to any legal authority. *See* TEX. R. APP. P. 38.1(i). An appropriate legal citation would be to the *Daniel* case, which holds that a court should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract

9

so that none will be rendered meaningless. *See Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 158 (Tex. 1951). It has also been recognized that the law, existing at the time a contract is formed, becomes a part of the contract. *See Kinnard v. Homann*, 750 S.W.2d 30, 31 (Tex. App.–Austin 1988, writ denied) (citing *Langever v. Miller*, 76 S.W.2d 1025, 1026-27 (Tex. 1934)). Valid agency rules and regulations, promulgated within the agency's authority, have the force and effect of law. *Id*. at 32 (citing *Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d 307, 310 (Tex. 1976)).

In *Homann*, a seller of real estate entered into a real estate listing agreement with a realtor and then left town. *Id*. at 31. The realtor became aware of a pending foreclosure sale, but did not inform the absent owner. *Id*. After the foreclosure sale took place, the owner sued the realtor for, among other things, breach of fiduciary duty. *Id.* The realtor argued that it owed only the duty to list the property as governed by the listing agreement. *Id*. The owner argued that the agreement incorporated an administrative rule promulgated by the Texas Real Estate Commission, which provided that "[a] real estate broker owes the very highest fiduciary obligation to his principal and is obliged to convey to his principal all information of which the agent has knowledge and which may affect the principal's decision." *Id*. The Austin Court of Appeals held that the administrative rule was, by law, a part of the listing agreement and imposed on the realtor the general duty to inform the owner of all information that might affect her decision about the listed property. *Id*. at 32.

In this case, the public interest hearing requirement that Canyon Regional challenges was, by law, a part of the agreement. A plausible interpretation of the phrase "may apply by appropriate means" is that both parties must submit to the administrative

rules that the Commission has in force. Additionally, the public interest hearing requirement of section 291.131 of title 30 of the administrative code was proposed in 1994, and the contract at issue was executed on October 13, 1998. *See* 19 TEX. REG. 6227(1994) (to be codified at 30 TEX. ADMIN. CODE §§ 291.128-291.138) (proposed Aug. 9, 1994) (Tex. Nat'l Res. Conser'n Comm.). Thus, when the contract was formed, a public interest hearing was the "appropriate means" to obtaining a rate-setting hearing on a petition from a rate that was set "pursuant to a written contract." *Id.*; *cf. Homann*, 750 S.W.2d at 31. Canyon Regional's second issue is overruled.

## C. The Validity of the Commission's Rate Appeal Rules

By its third and fourth issues, Canyon Regional argues that the administrative appellate rules the Commission promulgated "exceeded" the Commission's statutory authority by requiring a public interest hearing before proceeding to a rate-making hearing in rate disputes regarding state-owned water. Canyon Regional contends that the Commission has shirked its responsibility of "fix[ing] reasonable rates for the furnishing of raw or treated water" by hiding behind the public interest hearing requirement. *See* TEX. WATER CODE ANN. § 12.013 (Vernon 2008). The thrust of Canyon Regional's challenge to the rules is that no water-rate challenger has ever prevailed in a public interest hearing and, therefore, the public interest hearing requirement is inherently unfair and prevents challengers from proceeding to a "statutorily authorized" rate-setting hearing.

The Commission argues that Canyon Regional's broad reading of various water code provisions ignores the water appropriation process that currently exists between governmental entities. It contends that Guadalupe-Blanco, a subsidiary governmental

11

entity, has a vested usufructuary right in its water and that the administrative appellate rules in place properly balance Guadalupe-Blanco's rights while maintaining the Commission's statutory obligation to ensure that state water rates are reasonable. The Commission's argument properly frames our standard of review for Canyon Regional's third and fourth issues.

Construction of a statute—or in this case a statutory scheme—by an agency charged with its enforcement is entitled to serious consideration, as long as the construction is reasonable and does not contradict the plain language of the statute itself. *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993); *Steering Comms. for the Cities Served by TXU Elec. v. PUC*, 42 S.W.3d 296, 300 (Tex. App.–Austin 2001, no pet.). This is particularly true when the statute involves complex subject matter. *Steering Comms. for Cities*, 42 S.W.3d at 300. Courts, however, "do not defer to administrative interpretation in regard to questions which do not lie within administrative expertise, or deal with a nontechnical question of law." *Rylander v. Fisher Controls Int'l, Inc.*, 45 S.W.3d 291, 302 (Tex. App.–Austin 2001, no pet.).

The public interest hearing requirement for disputes of a water rate that is based on a contract is a permissible administrative rule given that the water code's regulatory scheme favors contracts between governmental entities for the supply of water. The legislature granted water districts contractual authority for the supply of water and vested oversight of such contracts with the Commission under section 11.036 of the water code, which provides that "[t]he price and terms of the contract shall be just and reasonable and without discrimination. . . ." TEX. WATER CODE ANN. § 11.036(b) (Vernon 2008). Contrary

12

to Canyon Regional's assertion, the statute does not emphasize the phrase "just and reasonable" to the detriment of contractual rights. In promulgating section 291 of title 30 of the administrative code, the Commission responded to public comments by noting that it "believes a review process with an inherent deference to contracts will encourage careful planning by sellers and purchasers, foster regionalization and generate an efficiency factor absent from the current process." 19 TEX. REG. 6227 (1994). Thus, the Commission promulgated an administrative rule that, at least in its opinion, protects legislatively created contractual rights between governmental entities. And, there is no compelling reason to disturb the rate-reviewing scheme that the Commission has crafted. *See Moore*, 845 S.W.2d at 823 (providing that an appellate court should uphold an administrative agency's interpretation of a statute "so long as the construction is reasonable and does not contradict the plain language of the statute"). Canyon Regional's third and fourth issues are overruled.

## D.    Attorney's Fees

By its fifth issue, Canyon Regional contends that it is entitled to attorney's fees based on Guadalupe-Blanco's breach of paragraph 17(c). It also contends that the trial court erred in awarding attorney's fees to Guadalupe-Blanco because it did not properly segregate its fees between recoverable and unrecoverable claims. Guadalupe-Blanco argues that it was not required to segregate attorney's fees because the nature of the underlying claims were very intertwined and because the declaratory judgment claims went beyond the APA and encompassed UDJA claims.

## 1.    Standard of Review

The need to segregate fees is a question of law, while the extent to which certain claims can or cannot be segregated is a mixed question of law and fact. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). Generally, a party seeking attorney's fees must segregate fees incurred in connection with a claim that allows their recovery from fees incurred in connection with claims for which no such recovery is allowed. *See 7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 506 (Tex. App.–Houston [14th Dist.] 2007, pet. filed) (citing *Chapa*, 212 S.W.3d at 313-14). This is because trial courts do not have inherent authority to require a losing party to pay the prevailing party's attorney's fees. *Chapa*, 212 S.W.3d at 311. They may only do so under authority of a contract or statute. *See id*.

Texas courts recognize an exception to this general rule. *See id*. When discrete legal services advance both recoverable claims and unrecoverable claims, attorneys are not required to segregate fees to recover the total amount covering all claims. *See id*. at 313. In this situation, the claims are said to be "intertwined," and the mere fact that attorney's fees are incurred in advancing both recoverable and unrecoverable claims does not render those fees unrecoverable. *See id*. at 313-14.

## 2. Applicable Law

The UDJA, which allows for the recovery of attorney's fees, provides that a claimant whose rights, status, or other legal relations are affected by a statute or contract may have determined any question of construction or validity arising under the statute or contract and obtain a declaration of rights, status, or other legal relations thereunder. TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.004(a), 37.009 (Vernon 2008). Section 2001.038 of the

14

government code, which does not allow for the recovery of attorney's fees, creates a cause of action for declaratory judgment regarding "[t]he validity or applicability of a rule . . . if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." TEX. GOV'T CODE ANN. § 2001.038(a).

## 3. Analysis

In this thoroughly litigated case, much energy was expended on the determination of attorney's fees. At the attorney's fees hearing, Canyon Regional argued that the fees could be segregated between two phases of the litigation. It contended that the first phase was a challenge to the applicability of the Commission's appellate rules, and the first phase only tangentially related to a contractual claim. Next, Canyon Regional contended that the second phase of the case was purely an APA suit to determine the validity of the Commission's appellate rules. Canyon Regional argued that Guadalupe-Blanco was obligated to segregate fees during the first phase of the case in order to obtain attorney's fees for work on only the recoverable claim and that Guadalupe-Blanco was not entitled to attorney's fees for the second phase of the case.

Guadalupe-Blanco argued that it was not obligated to segregate fees. It nevertheless, tendered numerous fee bills, tables, affidavits, and deposition testimony in support of its request for fees. One table divides legal fees by months and years. According to that table, Guadalupe-Blanco expended $141,198.27 in attorney's fees and expenses in 2004. The trial court concluded the first phase of the case on December 17, 2004, when it rendered a partial summary judgment that found the rate dispute was

pursuant to a contract and disposed of Canyon Regional's various contractual, statutory, and constitutional claims.

We find Canyon Regional's attorney's fees argument disingenuous. In one breath it argues that it is entitled to attorney's fees as a result of its contractual claim but that Guadalupe-Blanco is not entitled to fees because its claims are purely APA claims. It is true that when a party "files a proceeding that *only* challenges the validity of an administrative rule, the parties are bound by the APA and may not seek relief under the UDJA because such relief would be redundant." *Tex. State Bd. of Plumbing Exam'rs v. Associated Plumbing-Heating-Cooling Contractors of Tex., Inc.*, 31 S.W.3d 750, 753 (Tex. App.–Austin 2000, pet. dism'd by agr.) (emphasis added).

In this case, Canyon Regional's first-phase declaratory claims sought more than a declaration concerning the validity of a rule. In the first phase of this case, Canyon Regional asked the trial court to declare that: (1) the firm water rate was not a contractual rate; (2) Guadalupe-Blanco breached paragraph 17(c) of the agreement; (3) governmental entities do not enjoy a constitutional right to contract under the Texas Constitution; and (4) the Commission is statutorily obligated to fix reasonable water rates throughout the state. In essence, Canyon Regional choose to litigate claims for which only the UDJA could provide the relief that it sought. *See Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 442-43 (Tex. App.–Austin 2004, pet. denied). Consequently, Guadalupe-Blanco was forced to defend not only an APA dispute, but Canyon Regional's numerous contractual, constitutional, and statutory claims for declaratory relief.

It is clear from the judgment and record that the trial court considered the fee bills,

tables, and testimony in calculating the attorney's fees and arrived at its decision by balancing mixed questions of law and fact. In 2004, during the first phase of the case, Guadalupe-Blanco alleged that it expended $141,198.27 in attorney's fees and expenses. However, the trial court, in its discretion, only awarded Guadalupe-Blanco $120,000 in attorney's fees and taxed Canyon Regional with one-third of the award. *See Chapa*, 212 S.W.3d at 313-14. Besides making blanket assertions regarding Guadalupe-Blanco's "duty" to segregate, Canyon Regional does not factually challenge the trial court's ruling nor does it direct us to any testimony or exhibits that are contained in the nine volumes of the reporter's record that deal with attorney's fees. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain . . . appropriate citations . . . to the record."). Canyon Regional's fifth issue is overruled.[6]

### III. CONCLUSION

The trial court's judgment is affirmed.

ROGELIO VALDEZ
Chief Justice

Opinion delivered and filed this
the 30th day of October, 2008.

---

[6] Canyon Regional's motion to exceed the page limits in its briefing is herein denied.