ACCEPTED
03-15-00371-CV
7933484
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/20/2015 3:55:38 PM
JEFFREY D. KYLE
CLERK

**ORAL ARGUMENT REQUESTED**

**COURT OF APPEALS**

**THIRD DISTRICT OF TEXAS**

**AUSTIN, TEXAS**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/20/2015 3:55:38 PM
JEFFREY D. KYLE
Clerk

**NO. 03-15-00371-CV**

**CITY OF DALLAS,**

Appellant,

vs.

**SABINE RIVER AUTHORITY OF TEXAS,**

Appellee.

Appealed from the 53rd Judicial District Court, Travis County, Texas
Trial Court No. D-1-GN-15-000398

**BRIEF OF APPELLANT**

S. Anthony Safi
State Bar No. 17516800
Email: safi@mgmsg.com
Norman L. Gordon
State Bar No. 08203700
Email: gordon@mgmsg.com
MOUNCE, GREEN, MYERS,
SAFI, PAXSON & GALATZAN, P.C.
P. O. Box 1977
El Paso, Texas 79999-1977
Phone: (915) 532-2000
Facsimile: (915) 541-1548

ATTORNEYS FOR APPELLANT

**IDENTITY OF PARTIES AND COUNSEL**

This is an appeal from the 53rd Judicial District Court of Travis County, Texas, Cause No. D-1-GN-15-000398, The Honorable Stephen Yelenosky presiding. The parties and their counsel are as follows:

**City of Dallas**                                              **Plaintiff/Appellant**

S. Anthony Safi                                              Lead Appellate Counsel
safi@mgmsg.com
Norman J. Gordon                                       Trial and Appellate Counsel
Gordon@mgmsg.com
Merwan N. Bhatti                                                      Trial Counsel
Bhatti@mgmsg.com

Mounce, Green, Myers, Safi, Paxson & Galatzan
A Professional Corporation
P. O. Box 1977
El Paso, Texas  79999-1977

Ileana N. Fernandez                                                   Trial Counsel
Executive Assistant City Attorney
Ileana.Fernandez@dallascityhall.com

Christopher D. Bowers                                               Trial Counsel
First Assistant City Attorney
Chris.Bowers@dallascityhall.com

**Office of the City Attorney**
City of Dallas
1500 Marilla Street, 7BN
Dallas, Texas  75201

Gwendolyn Hill Webb                                        Trial Counsel
g.hill.webb@webbwebblaw.com

**Webb & Webb, Attorneys At Law**
211 East Seventh Street, Suite 712
Austin, Texas  78701

**Sabine River Authority of Texas**                    **Defendant/Appellee**

Jose E. de la Fuente                          Trial and Appellate Counsel
jdelafuente@lglawfirm.com
Georgia N. Crump                                          Trial Counsel
gcrump@lglawfirm.com
James F. Parker, III                                      Trial Counsel
jparker@lglawfirm.com
Melissa A. Long                                           Trial Counsel
mlong@lglawfirm.com
Lloyd Gosselink Rochelle & Townsend, P.C.
816 Congress Avenue, Suite 1900
Austin, Texas  78701

Charles W. Goehringer, Jr.                               Trial Counsel
cwgoehringer@germer.com
Germer, PLLC
P. O. Box 4915
Beaumont, Texas  77704

Gregg R. Brown                                           Trial Counsel
gbrown@germer-austin.com
Germer Beaman & Brown PLLC
301 Congress Avenue, Suite 1700
Austin, Texas  78701

# TABLE OF CONTENTS

**PAGE**

Identity of Parties and Counsel ................................................................. i

Table of Contents................................................................................. iii

Index of Authorities ............................................................................. v

Statement of the Case ........................................................................ viii

Statement Regarding Oral Argument.................................................... viii

Issues Presented .................................................................................x

    1.     Did the district court err by dismissing the case, because the Texas Uniform Declaratory Judgments Act waives the SRA's governmental immunity for the purpose of determining the validity of its legislative rate-setting action?..............................................................x

    2.     Did the district court err by dismissing the case, because the Texas Water Code waives the SRA's governmental immunity for purposes of the PUC proceeding, and ancillary judicial proceedings? ....................x

Statement of Facts............................................................................. 1

    The Parties ...................................................................................1

    The Lake Fork Reservoir ................................................................1

    The Agreement ............................................................................2

    Renewal Term and Payment .........................................................4

The Rate Increase ................................................................6

The Contested Case Hearing for Rate Review and Interim Rates .................7

Summary of the Argument ....................................................10

Argument..............................................................................11

    I.     Standard of Review...........................................................11

    II.    SRA's governmental immunity does not bar the City's request for declaratory relief concerning the validity of its Board's rate-setting action, because that action was legislative in nature ........................12

    III.   The Legislature waived the SRA's immunity under the Texas Water Code for purposes of the underlying Public Utility Commission proceeding and ancillary judicial proceedings...................................16

Conclusion ..........................................................................21

Prayer ................................................................................21

Certificate of Compliance......................................................22

Certificate of Service............................................................23

APPENDIX

    Tab 1  Order Granting Defendant Sabine River Authority of Texas' Plea to the Jurisdiction

    Tab 2  Trial Court Letter, dated May 21, 2015

**INDEX OF AUTHORITIES**

**CASES**                                                  **PAGE**

*BFI Waste Sys. of N. Am., Inc. v. Martinez Envtl. Group*,
93 S.W.3d 570 (Tex. App. – Austin 2002, pet. denied) ...............................17

*Canyon Regional Water Auth. v. Guadalupe-Blanco River Auth.*,
286 S.W.3d 397 (Tex. App. – Corpus Christi 2008, no pet.) ................... 17-18

*City of Alvin v. Public Utility Comm'n*, 876 S.W. 2d 450
(Tex. App. – Austin 1993), *writ granted w.r.m. and dism'd*,
893 S.W. 2d 450 (Tex. 1994) ....................................................................13

*City of Corinth v. Nurock Development, Inc.*,
293 S.W.3d 360 (Tex. App. – Fort Worth 2009, no pet.)............................15

*City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009)...................................12,13

*City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501
(Tex. App. – Austin 2014, no pet.).........................................................11,16

*Dallas Area Rapid Transit v. Oncor Electric Delivery Co.*, 331 S.W.3d 91
(Tex. App. – Dallas 2010), *rev'd on other grounds*, 369 S.W.3d 845
(Tex. 2012) ..............................................................................................20

*Gatesco Q.M., Ltd. v. City of Houston*, 333 S.W.3d 338
(Tex. App. – Houston [14th Dist.] 2010, no pet.) ...........................................ix

*Hamilton v. Washington*, No. 03-11-00594-CV, 2014 WL 7458988
(Tex. App. – Austin Dec. 23, 2014, no pet.) (mem. op.) ...............................13

*In re TXU Electric Co.*, 67 S.W.3d 130 (Tex. 2001).................................................19

*Lubbock Cnty. Water Control and Improvement Dist. v. Church & Atkin*,
442 S.W.3d 297 (Tex. 2014) ...................................................................14

**CASES** **PAGE**

*MAG-T, L.P. v. Travis Cent. Appraisal Dist.*, 161 S.W.3d 617
(Tex. App. – Austin 2005, pet. denied) ........................................................20

*Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d 69 (Tex. 2015)...........13

*R.R. Comm'n v. Houston Natural Gas Corp.*, 155 Tex. 502,
289 S.W. 2d 559 (1956)........................................................................ 13-15

*Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248 (Tex. 1999) .........................17

*San Jacinto River Auth. v. Simmons*, 167 S.W. 3d 603
(Tex. App. – Beaumont 2005, no pet.) ........................................................14

*Texas Dept. Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004) ..................11

*Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618 (Tex. 2011) ..........................12,16

*Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432 (Tex. 1994) ....................................12

*Texas Lottery Comm'n v. First State Bank of DeQueen*,
325 S.W.3d 628 (Tex. 2010) .....................................................................13

*Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849 (Tex. 2002) .........14

*Trinity River Auth. of Tex. v. Texas Water Rights Comm'n*,
481 S.W.2d 192 (Tex. Civ. App. – Austin 1972, writ ref'd n.r.e.)..................17

*Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780 (Tex. 1978).......... 19-20

*Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692 (Tex. 2003) ......................12,14

**TEXAS CONSTITUTION**

Tex. Const., Art. XVI, § 59...............................................................................1,13

**STATUTES**                                                           **PAGE**

Tex. Civ. Prac. & Rem. Code § 37.004....................................................................10

Tex. Civ. Prac. & Rem. Code § 37.006....................................................................12

Tex. Gov't Code, Ch. 551........................................................................................13

Tex. Gov't Code § 2001.038 ............................................................................ 18-19

Tex. Water Code § 1.003..........................................................................................4

Tex. Water Code § 12.013...................................................................................8,16

Tex. Water Code § 13.043.......................................................................................17

Tex. Water Code, Ch. 44 ..........................................................................................4

Tex. Water Code § 49.051.......................................................................................13

Tex. Water Code § 49.053.......................................................................................13

Tex. Water Code § 49.064.......................................................................................13

Act of April 13, 1907, 30th Leg., R.S., ch. 71, 1907 Tex. Special Laws 568,
    as amended  ........................................................................................................1

Act of April 27, 1949, 51st Leg., R.S., ch. 110, 1949 Tex. Gen. Laws 193,
    as amended  ........................................................................................................1

**ADMINISTRATIVE RULES**

16 Tex. Admin. Code § 24.29 ..................................................................................8

16 Tex. Admin. Code § 24.131 ......................................................................9,16,17

**STATEMENT OF THE CASE**

Appellant City of Dallas ("City") sued Appellee Sabine River Authority of Texas ("SRA") for declaratory judgment pursuant to an order issued by the Public Utility Commission of Texas. CR 222-442 (First Amended Petition).[1] The SRA filed a plea to the jurisdiction, claiming that the City's suit was barred by governmental immunity. CR 218-21. After conducting an evidentiary hearing, the Honorable Stephen Yelenosky, Judge of the 345th District Court, entered his order granting the plea to the jurisdiction, and dismissing the case in its entirety. CR 735. On the same day, he sent a letter to counsel, to the effect that he believed that the City's suit was barred by governmental immunity. CR 733-34.

**STATEMENT REGARDING ORAL ARGUMENT**

This case was filed below pursuant to the applicable rules and administrative orders of the Public Utility Commission of Texas ("PUC") in order to determine the sole issue of whether the rate unilaterally set by the SRA for the water purchased by the City was set pursuant to a written contract between the parties. The case was properly filed under the Uniform Declaratory Judgments Act ("UDJA"), but was

---

[1] We cite the Clerk's Record by page as "CR ___." We cite the Reporter's Record by volume and exhibit as "___ RR ___." Where an item appears in both the Reporter's Record and the Clerk's Record, we endeavor to provide parallel cites.

dismissed by the district court based on the SRA's plea of governmental immunity.

"The Texas Declaratory Judgments Act contains a waiver of immunity from suit. (citations omitted). But, this waiver is a limited one, and determining whether a particular request for declaratory relief falls within this waiver of immunity is a complicated matter under current law." *Gatesco Q.M., Ltd. v. City of Houston*, 333 S.W.3d 338, 347 (Tex. App. – Houston [14th Dist.] 2010, no pet.).

We respectfully submit that this "complicated matter" involving the rate to be charged to the City of Dallas for billions of gallons of water – and ultimately affecting the rates the City charges to hundreds of thousands of customers, now and 40 years into the future – deserves this Court's fullest possible attention. We believe that oral argument would aid the Court's decisional process by serving to clarify the ultimate legal issues in this case.

ix

## ISSUES PRESENTED

The City and the SRA are parties to a Water Supply Contract and Conveyance ("Agreement"), by which the City is granted the right to take most of the available water from the Lake Fork Reservoir. The Agreement provides that upon the expiration of the original term, the rate for the renewal term "shall be determined by mutual agreement" and failing mutual agreement, "the Texas Water Commission may establish interim compensation to be paid by the City to the authority." When the parties were unable to reach agreement, the SRA board of directors unilaterally set a rate for the renewal term significantly higher than the prior rate. The City filed a proceeding with the Public Utility Commission, which accepted jurisdiction of the case. The PUC's handling of a water rate issue will vary, depending upon whether the rate is set pursuant to written contract. A SOAH administrative law judge determined that the rate was not set pursuant to the contract between the parties; however, the SRA disagreed and stated that the issue should be referred to a court for determination, pursuant to applicable PUC rule. After the administrative law judge abated the administrative proceeding pending a court ruling, the City filed this case in the district court below. Based on the above undisputed facts,

1. Did the district court err by dismissing the case, because the Texas Uniform Declaratory Judgments Act waives the SRA's governmental immunity for the purpose of determining the validity of its legislative rate-setting action?

2. Did the district court err by dismissing the case, because the Texas Water Code waives the SRA's governmental immunity for purposes of the PUC proceeding, and ancillary judicial proceedings?

## STATEMENT OF FACTS

### The Parties

The City of Dallas ("City") is a Texas home-rule municipal corporation, with its administrative offices located in Dallas County, Texas. The City is incorporated by virtue of a Special Act of the Texas Legislature. *See* Act of April 13, 1907, 30th Leg., R.S., ch. 71, 1907 Tex. Special Laws 568, as amended. The City exercises the functions of a home-rule municipal corporation under that Act, which Act and its amendments constitute the City's charter, and under all applicable provisions of the constitution and laws of the State granting powers to the City and recognizing and preserving the inherent powers of home-rule cities in accordance with Article XI, section 5 of the Constitution of the State of Texas.

The Sabine River Authority of Texas ("SRA") is a conservation and reclamation district and a water control and improvement district created by the Legislature in accordance with Article XVI, Section 59 of the Texas Constitution. See Act of April 27, 1949, 51st Leg., R.S., ch. 110, 1949 Tex. Gen. Laws 193, as amended.

### The Lake Fork Reservoir

In 1974, the Texas Water Rights Commission issued to the SRA a permit to construct a dam and reservoir on Lake Fork Creek, a tributary to the Sabine River, and to divert specified amounts of water from the Reservoir to be constructed for

municipal and industrial uses.  The permit was issued "subject to the rules and regulations of the Texas Water Rights Commission and to its right of continual supervision," and the SRA agreed "to be bound by the terms, conditions and provisions contained" in the permit as "a condition precedent to the granting" of the permit.  The SRA was required to operate the reservoir and dam in such a manner so as to maintain the minimum required flow of the Sabine River to the Louisiana border, in accordance with the Sabine River Compact.  3 RR , Ex. J to Ex. A to Ex. 1; CR 391-92.

## The Agreement

In 1981, the City, the SRA and other parties entered into a Water Supply Contract and Conveyance (the "Agreement") related to the assignment and conveyance of water from the Lake Fork Reservoir to the City for its municipal and resale purposes.  3 RR, Ex. A to Ex. 1; CR 235-434.  In the Agreement, the SRA and the other parties conveyed water rights for up to 74% of the dependable yield of the Lake Fork Reservoir to the City for its use as a water supply utility, and the right to sell and convey the water as permitted by law.

The City agreed in exchange to acquire, construct, and provide all necessary works to provide for water intake and withdrawal.  3 RR, Ex. A to Ex. 1, p. 9, §§ 2.04 and 2.05; CR 243.  The City also agreed to pay Semi-Annual Facilities Charges, in

2

amounts sufficient to amortize the Bonds, in the principal amount of $115,000,000.00, sold in order to finance the construction of the dam and reservoir. The City further agreed to pay Service Charges to cover the operating and maintenance expenses of the dam, reservoir, and related facilities. 3 RR, Ex. A to Ex. 1, § § 1.08, 1.15, 1.16, 3.05; 3 RR, Ex. H to Ex. A to Ex. 1; CR 238, 240, 245-46, 358-59. The payments by the City were to be financed by its revenues from its municipal water supply system. 3 RR, Ex. A to Ex. 1, § 3.07; CR 246-47.

In 1983, the Texas Water Commission issued Permit 2948, authorizing the diversion of 120,000 acre feet of water per annum from the Lake Fork Reservoir to the Trinity River Basin for use by the City of Dallas. 3 RR, Ex. C to Ex. 1.

The parties executed a Supplement to the Agreement in 1986, increasing the amount of water dedicated to the City, subject to Texas Water Commission approval. 3 RR, Ex. B to Ex. 1. In 1988, the Texas Water Commission issued a Certificate of Adjudication, authorizing a diversion of up to 131,860 acre feet per annum for municipal purposes by the City of Dallas, including up to 120,000 acre feet to be transferred to the Trinity River Basin. 3 RR, Ex. C to Ex. 1. The Certificate of Adjudication was issued "subject to the obligations of the State of Texas pursuant to the terms of the Sabine River Compact," and "subject to the Rules of the Texas Water Commission and its continuing right of supervision of State water

3

resources consistent with the public policy of the State as set forth in the Texas Water Code."

The Certificate of Adjudication was subsequently amended, in 1996, 2008, and 2013. As finally amended, the Certificate of Adjudication authorizes a withdrawal from the Lake Fork Reservoir of up to 188,660 acre feet of water per year, with over two-thirds of that amount, up to 131,680 acre feet per year, dedicated to the City of Dallas. *Id.*

The Agreement was and is in the public interest, because it provides a source of water to the City of Dallas and its many residents and other customers, and provided a means of financing the construction of the Lake Fork dam and Reservoir. Moreover, it provides for the conservation and beneficial use of water from the Sabine River and its reservoirs, in accordance with the Sabine River Compact. *See* Tex. Water Code, Ch. 44. It also promotes the public policy of the State of Texas to provide for the conservation and development of the state's natural resources, specifically including the control, storage, preservation, and distribution of the waters from the state's rivers. Tex. Water Code § 1.003.

## Renewal Term and Payment

The Agreement provided that it would be automatically renewed for a 40-year term effective November 1, 2014, unless the City gave written notice of

4

termination at least one year beforehand.  3 RR, Ex. A to Ex. 1, p. 21, § 6.01; CR 255.

The City did not give notice of termination, and in fact gave the SRA timely notification of its intent to renew the Agreement.

The compensation to be received by the SRA for the renewal term, as defined in Section 6.02 of the Agreement, is to be set by mutual agreement between the SRA and the City, "taking into account such price as is prevailing in the general area at the time for like contract sales of water of similar quality, quantity and contract period."  The Agreement further provides that, if the City and the SRA are unable to agree on the amount of compensation prior to the commencement of the renewal term, the Texas Water Commission[2] may establish interim compensation, until the amount of compensation is finally determined.  It reads:

> 6.02   *The amount of compensation* that the Authority shall be entitled to receive during any renewal term (exclusive of the City's pro rata share of the Service Charge) *shall be determined by mutual agreement between the City and the Authority*, taking into account such price as is prevailing in the general area at the time for like contract sales of water of similar quality, quantity and contract period.  The City and the Authority agree to commence negotiations to determine the amount

---

[2] Now the PUC.  In 1991, the Legislature combined the Texas Water Commission and two other state agencies into the Texas Natural Resources Conservation Commission (TNRCC). *See* Act of July 30, 1991, 72nd Leg., 1st C.S., ch. 3, art. 1, 1991 Tex. Gen. Laws 4.  In 2001, the Legislature changed the name of the TNRCC to the Texas Commission on Environmental Quality (TCEQ). *See* Act of June 15, 2001, 77th Leg., R.S., ch. 965, § 18.01, 2001 Tex. Gen. Laws 1985.  In 2013, the Legislature transferred the water rate functions of the TCEQ to the PUC.  Texas Water Code § 12.013 (West Supp. 2014); *see* Act of May 13, 2013, 83rd Leg., ch. 170, § 2.07, 2013 Tex. Gen. Laws 725; Act of May 13, 2013, 83rd Leg., ch. 171, § 7, 2013 Tex. Gen. Laws 772.

of such compensation at least one year prior to the expiration of the initial period and each successive forty (40) year term thereafter. *In the event that the City and the Authority are unable to agree upon the amount of such compensation prior to the expiration of each such term, the Texas Water Commission may establish interim compensation to be paid by the City to the Authority*. It is understood and agreed by the City and the Authority that the amount of compensation finally determined for each renewal term shall be applicable from and after the commencement of the then current term; if the interim compensation is greater than the amount of compensation finally determined, the Authority agrees to pay the City such overage within ninety (90) days after such determination, and if the interim compensation is less than the amount of compensation finally determined, the City agrees to pay to the Authority such underage within ninety (90) days after such determination.

3 RR, Ex. A to Ex. 1, pp. 21-22, § 6.02; CR 255 (emphasis added).

Section 9.09 of the Agreement provides that it is "subject to the approval and the continuing jurisdiction of the Texas Department of Water Resources, including the Texas Water Commission, or its successor agency." CR 262.

### The Rate Increase

For several years prior to November 1, 2014, the City attempted to negotiate with the SRA a rate for the renewal term. However, the SRA and the City could not agree on a renewal term rate.

The General Manager of the SRA sent a letter to the City dated October 13, 2014 announcing a decision of the SRA Board of Directors to increase the rate to be paid by the City. The letter informed the City that on October 9, 2014, the Board

of Directors of the SRA unilaterally adopted a renewal rate of $0.5613 per 1000 gallons, payable on a "take or pay" basis for 131,860 acre-feet of water per year, with a price escalator based on the Consumer Price Index [a total rate increase of 900% over the previous rate paid by the City]. 3 RR, Ex. B to Ex. 1; CR 435.[3]

Inasmuch as an acre foot contains just over 325,850 gallons, the SRA-set rate would require the City to pay to the SRA over $24,000,000.00 per year, or nearly $1,000,000,000.00 over the course of the 40-year renewal term – even if there were to be *no* CPI price escalations.

The plain terms of the Agreement call for the rates to be set for the 40-year period beginning November 1, 2014 *by mutual agreement* of the parties. Any attempt by either party to set a rate unilaterally has no support in the language of the Agreement.

### The Contested Case Hearing for Rate Review and Interim Rates

The City filed an Original Petition for Review and Request for Interim Rates with the PUC on October 30, 2014, complaining of the renewal water rate for the

---

[3] The effect of SRA's unilateral rate would be a dramatic 900% increase in the rate the City pays for its water from the Reservoir. The SRA seeks to force this rate increase on the City, despite the fact that the City paid 100% of the cost of construction and financing of the Reservoir, and despite the fact that the City has paid a Service Charge equal to 74% of the operation and maintenance costs of the Reservoir each year since 1981, pursuant to the terms of the Agreement discussed above.

City purportedly set by the SRA earlier that month.  3 RR, Ex. 1.  The case was designated PUC Docket No. 43674, and was referred to the State Office of Administrative Hearings, where it is designated SOAH Docket No. 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.WS.

On January 9, 2015, the SOAH Administrative Law Judge issued Order No. 4, accepting jurisdiction of the rate appeal on behalf of SOAH under Tex. Water Code § 12.013, and setting a Prehearing Conference to establish interim rates during the pendency of the case, under 16 Tex. Admin. Code § 24.29.  4 RR, Ex. 3.  The ALJ noted that because SRA had acted unilaterally, it had not set a rate pursuant to the written contract, but that if the parties disagreed on this point, the matter would be abated under the applicable PUC Substantive Rule,  which states:

**Commission's Review of Petition or Appeal**
**Concerning Wholesale Rate**

(a) When a petition or appeal is filed, the commission shall determine within ten days of the filing of the petition or appeal whether the petition contains all of the information required by this subchapter. For purposes of this section only, the initial review of probable grounds shall be limited to a determination whether the petitioner has met the requirements §24.130 of this title (relating to Petition or Appeal). If the commission determines that the petition or appeal does not meet the requirements of §24.130 of this title, the commission shall inform the petitioner of the deficiencies within the petition or appeal and allow the petitioner the opportunity to correct these deficiencies. If the commission determines that the petition or appeal does meet the requirements of §24.130 of this title, the commission

8

shall forward the petition or appeal to the State Office of Administrative Hearings for an evidentiary hearing.

(b) For a petition or appeal to review a rate that is charged pursuant to a written contract, the commission will forward the petition or appeal to the State Office of Administrative Hearings to conduct an evidentiary hearing on public interest.

(c) For a petition or appeal to review a rate that is not charged pursuant to a written contract, the commission will forward the petition or appeal to the State Office of Administrative Hearings to conduct an evidentiary hearing on the rate.

(d) *If the seller and buyer do not agree that the protested rate is charged pursuant to a written contract, the administrative law judge shall abate the proceedings until the contract dispute over whether the protested rate is part of the contract has been resolved by a court of proper jurisdiction.*

16 Tex. Admin. Code § 24.131 (emphasis added).

The SRA filed a Motion to Abate and Appeal of Order No. 4. 4 RR, Ex. 4. In its Motion to Abate, the SRA stated that the City and the SRA disagreed as to whether the protested rate was set pursuant to a written contract, and specifically requested "that this matter be abated for the contractual dispute to be resolved by a court of proper jurisdiction." *Id.* at p. 2.

On January 21, 2015, the SOAH ALJ issued Order No. 5. 4 RR, Ex. 7. This Order granted SRA's Motion to Abate and cancelled further proceedings, stating:

9

The applicable law concerning abatement is clear and grants the ALJ no discretion. If the seller and buyer do not agree that the protested rate is charged pursuant to a written contract the ALJ must abate the proceeding until the contract dispute over whether the protested rate is set pursuant to a contract has been resolved by a court of proper jurisdiction.

Because the SOAH ALJ abated the case without setting an interim rate, the City appealed SOAH Order No. 5 to the Commission, which granted the Appeal by Order dated March 26, 2015. 4 RR, Ex. 10; CR 436-42. On remand from the PUC, the SOAH ALJ entered SOAH Order No. 8 on April 2, 2015 setting an interim rate. 4 RR, Ex. 12. The proceeding at the PUC has been and is now abated pending a court decision whether the rate purportedly set by the SRA Board on October 9, 2014 was a rate set pursuant to written contract.

## SUMMARY OF THE ARGUMENT

The trial court erred in granting the SRA's plea to the jurisdiction based on a governmental immunity theory, for two separate and independent reasons. First, SRA's immunity was waived pursuant to Sections 37.004 and 37.006 of the UDJA, because this case involves the validity of the SRA Board purporting to unilaterally set the rate the City is to pay for water from the Lake Fork Reservoir for the next 40 years, an act that was legislative in nature. Second, the district court had jurisdiction of the case because SRA's governmental immunity had been waived by

10

the Texas Water Code for purposes of the underlying PUC proceeding, and ancillary

judicial proceedings.

**ARGUMENT**

**I.      Standard of Review.**

The issue before the Court is whether the City's pleadings and evidence were

sufficient to overcome the plea of governmental immunity and thereby establish

the district court's subject matter jurisdiction.   This is a question of law, to be

determined by this Court on a *de novo* basis.  *City of New Braunfels v. Carowest*

*Land, Ltd.*, 432 S.W.3d 501, 512 (Tex. App. – Austin 2014, no pet.).  As stated by the

Texas Supreme Court:

> When a plea to the jurisdiction challenges the pleadings, we
> determine if the pleader has alleged facts that affirmatively
> demonstrate the court's jurisdiction to hear the cause. (Citation
> omitted).  We construe the pleadings liberally in favor of the plaintiffs
> and look to the pleaders' intent.

*Texas Dept. Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

> When reviewing a plea to the jurisdiction in which the pleading
> requirement has been met and evidence has been submitted to
> support the plea that implicates the merits of the case, we take as true
> all evidence favorable to the nonmovant. (Citation omitted).  We
> indulge every reasonable inference and resolve any doubts in the
> nonmovant's favor.

*Id.* at 228.

11

## II. SRA's governmental immunity does not bar the City's request for declaratory relief concerning the validity of its Board's rate-setting action, because that action was legislative in nature.

Under the Declaratory Judgments Act, governmental immunity is waived to determine whether a statute, ordinance or other legislative pronouncement is invalid. *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011). In 2009, the Supreme Court summarized the law relevant to this issue as follows:

> For claims challenging the validity of ordinances or statutes, however, the Declaratory Judgment Act requires that the relevant governmental entities be made parties, and thereby waives immunity. Tex. Civ. Prac. & Rem. Code § 37.006(b) ("In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard."); *see Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697-98 (Tex. 2003) ("[I]f the Legislature requires that the State be joined in a lawsuit for which immunity would otherwise attach, the Legislature has intentionally waived the State's sovereign immunity."); *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994) ("The DJA expressly provides that persons may challenge ordinances or statutes, and that governmental entities must be joined or notified. Governmental entities joined as parties may be bound by a court's declaration on their ordinances or statutes. The Act thus contemplates that governmental entities may be—indeed, must be— joined in suits to construe their legislative pronouncements.").

*City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009).

This Court has recognized that "[t]he supreme court has interpreted the UDJA as requiring that any governmental entity affected by a statutory challenge,

12

not only municipalities, be joined." *Hamilton v. Washington*, No. 03-11-00594-CV, 2014 WL 7458988 at *7 (Tex. App. – Austin Dec. 23, 2014, no pet.) (mem. op.), *citing Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 634 (Tex. 2010); *Heinrich*, 284 S.W.3d at 373 n. 6; *Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994). *See also Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d 69, 76-77 (Tex. 2015). These cases clearly stand for the proposition that the UDJA waives immunity for challenges to the validity of legislative enactments or pronouncements of all governmental entities.

As a district or authority created under Article XVI, Section 59, of the Texas Constitution, the SRA is covered by Chapter 49 of the Texas Water Code. As such, it is governed by a board of directors. Tex. Water Code § 49.051. A majority of the membership of the board constitutes a quorum, and the board acts with the "concurrence of a majority of the entire membership of the board." Tex. Water Code § 49.053. Meetings of the board "shall be conducted in accordance with the open meetings law, Chapter 551, Government Code." Tex. Water Code § 49.064.

The rate unilaterally set by the SRA Board on October 9, 2014, was a legislative act of the SRA, as ratemaking is inherently legislative in nature. *See City of Alvin v. Public Utility Comm'n*, 876 S.W. 2d 450 (Tex. App. – Austin 1993), *writ granted w.r.m. and dism'd*, 893 S.W. 2d 450 (Tex. 1994); *R.R. Comm'n v. Houston*

*Natural Gas Corp.*, 155 Tex. 502, 289 S.W. 2d 559, 562 (1956). The Declaratory Judgments Act clearly waives SRA's immunity for determining the validity of its legislative action.

SRA conceded below that the City "is undoubtedly correct that ratemaking is a legislative process." CR 724. SRA argued only that this is not actually a rate case – even though the SRA is authorized to sell water from the Lake Fork Reservoir and set the rates therefor, pursuant to the Certificates of Adjudication discussed above, subject to regulation by the PUC, and such limitations to which it may agree with its customers, such as the City.

The cases cited by SRA below were simply not on point, and do not support its contention that its ratemaking was not legislative in nature. *Lubbock Cnty. Water Control and Improvement Dist. v. Church & Atkin*, 442 S.W.3d 297 (Tex. 2014), was a lease dispute between a landlord and a tenant brought under Chapter 271 of the Local Government Code. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849 (Tex. 2002) was a contractor's suit to recover additional expenses and lost profits incurred due to unforeseen site conditions. *San Jacinto River Auth. v. Simmons*, 167 S.W. 3d 603 (Tex. App. – Beaumont 2005, no pet.), was a personal injury case for money damages. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692 (Tex. 2003), was a wrongful death claim seeking waiver of immunity through the

Patient Bill of Rights Act.

SRA cited *R.R. Comm'n v. Houston Natural Gas Corp.*, 155 Tex. 502, 289 S.W.2d 559 (1956) for the proposition that "cities have no inherent power apart from statute to fix utility rates," but this statement was made in the context of a city setting a rate for the sale of natural gas owned by a natural gas utility – not a natural resource controlled, at least in part, by the city itself. It also cited *City of Corinth v. Nurock Development, Inc.*, 293 S.W.3d 360 (Tex. App. – Fort Worth 2009, no pet.), but that case had nothing at all to do with ratemaking. It simply involved the alleged breach of a settlement agreement involving the construction of an affordable housing apartment project. None of the cases cited by SRA supported its argument.

By contrast, in this case SRA purported to set a rate for billions of gallons of water, affecting not only the City, but all of its downstream customers for the next 40 years. Its action affects the interests of millions of persons – many as yet unborn – not just two insular parties to a contract. It set a "rate" that affects the public interest, and that is subject to the jurisdiction of the PUC.

Rate setting is inherently a legislative function, and that is exactly what the SRA Board of Directors purported to do – legislatively set a rate, by the vote of its governing body. Its action is subject to judicial review under the Declaratory

15

Judgments Act for the limited purpose of determining whether or not it was valid as a "rate that is charged pursuant to a written contract," as that term is used in 16 Tex. Admin. Code § 24.131(b), (c), and (d).

**III.    The Legislature waived the SRA's immunity under the Texas Water Code for purposes of the underlying Public Utility Commission proceeding and ancillary judicial proceedings.**

As recently recognized by this Court, a UDJA case against a governmental entity is not barred by immunity where "the Legislature has waived immunity as to the subject matter of the claim." *City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 530 (Tex. App. – Austin 2014, no pet.) (*citing Sefzik*, 355 S.W.3d at 622). This Court held that declaratory relief under the UDJA was not barred by immunity, because Carowest asserted "various statutory waivers of immunity that are independent of and external to the UDJA" – the Texas Open Meetings Act and provisions of the Texas Local Government Code.  Likewise, in this case, in addition to the waiver of the SRA's immunity under the UDJA itself, its immunity to the declaratory relief sought by the City is waived by a statutory waiver of immunity that is "independent and external to the UDJA" – the Texas Water Code.

The Legislature waived SRA's immunity through the Texas Water Code provisions which give the PUC jurisdiction to review SRA's purported rate action of October 9, 2014.  There is no question that the Texas Water Code sections 12.013

16

and 13.043 waive any sovereign immunity for a case at the Public Utility Commission. *See Trinity River Auth. of Tex. v. Texas Water Rights Comm'n*, 481 S.W.2d 192, 196 (Tex. Civ. App. – Austin 1972, writ ref'd n.r.e.) (applying predecessor statute). The PUC has jurisdiction to resolve this dispute, and has indicated it will do so once the Courts have determined the single issue of whether the SRA Board's rate-setting was done pursuant to the written Agreement.

Valid agency rules have the same force and effect as statutes. *BFI Waste Sys. of N. Am., Inc. v. Martinez Envtl. Group*, 93 S.W.3d 570, 575 (Tex. App. – Austin 2002, pet. denied). The courts construe administrative rules, which have the same force as statutes, in the same manner as statutes. *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999). The applicable rule here merely allows for a legal ruling pursuant to the Legislature's Water Code waiver of governmental immunity for rate setting.

Section 24.131(d) specifically provides that if the "seller and buyer do not agree that the protested rate is charged pursuant to a written contract, the administrative law judge shall abate the proceedings until the contract dispute over whether the protested rate is part of the contract has been resolved by a court of proper jurisdiction." 16 Tex. Admin. Code § 24.131(d). This PUC rule is modeled after the predecessor TCEQ rule, the validity of which was upheld in *Canyon*

*Regional Water Auth. v. Guadalupe-Blanco River Auth.*, 286 S.W.3d 397 (Tex. App. – Corpus Christi 2008, no pet.). The court there recognized that state agency administrative rules "have the same force as statutes." *Id.* at 403. Under the Declaratory Judgments Act, the courts determined in that case that the contested rate at issue was set pursuant to contract, but our point here is that the validity of the rule was upheld in a context similar to this one, where the seller and the buyer were both political subdivisions entitled to governmental immunity.

In SOAH Order No. 4, the ALJ applied the rule, and provided that if the parties did not agree that the rate was charged pursuant to a written contract, then proceedings would be abated "until the contract dispute over whether the protested rate is part of the contract has been resolved by a court of proper jurisdiction." 4 RR, Ex. 4, p. 4. The SRA appealed SOAH Order No. 4, but "that appeal was denied by operation of law." 4 RR, Ex. 10, p. 3.

SRA insisted before the PUC that the SRA Board had set the rate pursuant to the Agreement of the parties, and that a court must therefore make the determination whether the rate purportedly set on October 9, 2014 is a rate set pursuant to contract within the meaning of the PUC's rules. 4 RR, Ex. 4. It was SRA's demand to have the issue decided by a court that caused this action to be filed in the trial court.

The court in the *Canyon Regional* case upheld the validity of the predecessor rule against an attack filed under the Administrative Procedure Act, Tex. Gov't Code § 2001.038. That section provides that the validity or applicability of a rule may be challenged in court "if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege." Such a case must be filed in Travis County district court, and the applicable state agency – in this case, the PUC – "must be made a party to the action."

In the district court, SRA essentially argued that the administrative rule calling for a determination of the "pursuant to a written contract" issue to be determined in court was invalid or inapplicable as applied to it. If it wished to advance such an argument, then it should have filed a declaratory judgment suit under the Administrative Procedures Act and joined the PUC as a party, but of course it did not do so.

If SRA believed the PUC lacked jurisdiction over this dispute, or if it believed that the PUC and SOAH orders entered below were incorrect as a matter of law and thus an abuse of discretion, it could have filed a petition for writ of mandamus. *See In re TXU Electric Co.*, 67 S.W.3d 130 (Tex. 2001). Or, it could have filed an injunction suit. *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785

19

(Tex. 1978). It did neither.

SRA cited *Dallas Area Rapid Transit v. Oncor Electric Delivery Co.*, 331 S.W.3d 91 (Tex. App. – Dallas 2010), *rev'd on other grounds*, 369 S.W.3d 845 (Tex. 2012) in the district court for the proposition that the PUC cannot waive immunity. In that case, Oncor claimed that the PUC's regulatory authority over Oncor waived *DART's* immunity. But the PUC had no authority to regulate DART; DART was not subject to its jurisdiction. Here, the Legislature waived SRA's immunity by enacting the Texas Water Code and placing the SRA and this dispute under the PUC's jurisdiction.

An aggrieved party is excused from exhausting its administrative remedies if the issue presented is purely a question of law. *MAG-T, L.P. v. Travis Cent. Appraisal Dist.*, 161 S.W.3d 617, 624-25 (Tex. App. – Austin 2005, pet. denied). Here by rule and Order the PUC asks for a specific legal determination to be made by the Court. The determination of whether the rate was set by the SRA pursuant to the Agreement is an integral and indispensable part of the PUC proceeding. And whether the rate was set pursuant to a written contract is purely a question of law.

The PUC's jurisdiction over SRA pursuant to the Texas Water Code, and its unchallenged Rule and Orders, have the effect of waiving SRA's immunity for the limited purpose of this suit – to determine whether the rate SRA purported to set was pursuant to a written contract. This Court should remand this case to the trial

20

court to make that determination, so that the PUC may proceed to finalize this dispute accordingly.

## CONCLUSION

The district court erred in granting the SRA's plea to the jurisdiction and in dismissing the City's declaratory judgment suit. The PUC Rule and Order referring the legal issue of whether or not the SRA rate setting was pursuant to the written agreement of the parties are valid and have not been attacked (other than collaterally) by the SRA.

The district court had jurisdiction under the UDJA because the City is challenging the validity of the SRA's rate setting, which was legislative in nature, and because the SRA's immunity for purposes of this proceeding has been waived by the Legislature by granting the PUC jurisdiction over this matter in the Texas Water Code. Accordingly, the judgment of the district court should be reversed and this case remanded to it for further proceedings consistent with the opinion of this Court.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff/Appellant The City of Dallas respectfully prays that this Honorable Court reverse the judgment of the district court, determine that the district court does have jurisdiction over the SRA and

over the subject matter of this declaratory judgment suit, and remand the case to the district court for further proceedings consistent with the opinion of this Court.

Respectfully submitted,

S. Anthony Safi
State Bar No. 17516800
Norman J. Gordon
State Bar No. 08203700
MOUNCE, GREEN, MYERS, SAFI,
PAXSON & GALATZAN
A Professional Corporation
P. O. Box 1977
El Paso, Texas  79999-1977
(915) 532-2000
Fax No. (915) 541-1548


By:     _/s/ S. Anthony Safi_____
           S. Anthony Safi

Attorneys for Appellant

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Tex. R. App. P. 9.4(i)(2)(B) because this brief contains 5,432 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).


 _/s/ S. Anthony Safi_____
S. Anthony Safi

22

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 20th day of November, 2015, a true and correct copy of this Brief of Appellant was electronically filed with the Clerk of the Court using the e-filing system service provider, which will serve a copy of same on the following counsel of record: Jose E. de la Fuente, Lloyd Gosselink Rochelle & Townsend, P.C., 816 Congress Avenue, Suite 1900, Austin Texas 78701 (jdelafuente@lglawfirm.com).

/s/ S. Anthony Safi
S. Anthony Safi

1230639/SAS/13175-122

23

*Filed in The District Court of Travis County, Texas*
**MAY 2 1 2015**
At _____ 4:40 P.M.
Velva L. Price, District Clerk

CAUSE NO. D-1-GN-15-000398

| | | |
|---|---|---|
| CITY OF DALLAS, | § | |
| | § | |
| *Plaintiff,* | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | FOR THE 53rd JUDICIAL |
| | § | |
| THE SABINE RIVER AUTHORITY | § | OF TRAVIS COUNTY, TEXAS |
| OF TEXAS, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER GRANTING DEFENDANT
## SABINE RIVER AUTHORITY OF TEXAS' PLEA TO THE JURISDICTION

On May 14, 2015, came on to be heard the Plea to the Jurisdiction filed and argued by Defendant Sabine River Authority of Texas. The Court, after considering the pleadings, the briefing, and the arguments of counsel determines that the Plea to the Jurisdiction should be granted in all things.

IT IS, THEREFORE, ORDERED that Defendant Sabine River Authority of Texas' Plea to the Jurisdiction is hereby GRANTED, and this case is dismissed in its entirety.

This Order is final and appealable.

SIGNED on the 21st day of May, 2015.

_____
JUDGE PRESIDING

**ORDER GRANTING DEFENDANT'S PLEA TO THE JURISDICTION—PAGE 1**



004041740

ENTERED
JSH

735



## 345TH DISTRICT COURT
TRAVIS COUNTY COURTHOUSE
P. O. BOX 1748
AUSTIN, TEXAS 78767

**STEPHEN YELENOSKY**
Judge
(512) 854-9374

DANA LEWIS
Staff Attorney
(512) 854-9892

ANGELA BURKES
Court Operations Officer
(512) 854-9712

ALBERT ALVAREZ
Official Reporter
(512) 854-9373

PATRICIA WINKLER
Court Clerk
(512) 854-4309

May 21, 2015

Mr. Jose E. de la Fuente
Lloyd Gosselink Rochelle & Townsennd, PC
816 Congress Avenue, Suite 1900
Austin, Texas 78701
*Via Facsimile: (512)472-0532*

Mr. Norman J. Gordon
Mounce, Green, Myers, Safi, Paxson
& Galatzan, A Professional Corporation
100 N. Stanton, Suite 1000
El Paso, Texas 79901
*Via Facsimile: (915)541-1548*

Ms. Gwendolyn Hill Webb
Webb & Webb, Attorneys at Law
211 East Seventh Street, Suite 712
Austin, Texas 78701
*Via Facsimile: (512) 472-3183*

> Re: Cause No. D-1-GN-15-000398; *City of Dallas vs. The Sabine River Authority of Texas in the 53rd Judicial District Court, Travis County, Texas*

Dear Counsel:

This letter is to give you my ruling as well as some insight into my reasoning but not to invite further argument. My explanation here does not exclude other reasons I may have or limit the possible bases of support for my order.

From the perspective of the SOAH hearings officer and the PUC, the question is whether the fee Sabine Water Authority charges the City of Dallas "is a rate that is charged pursuant to a written contract." 16 TAC § 24.131. From the court's perspective, the question is whether it has jurisdiction to answer.

Typically, I imagine, the existence of an applicable contract and an unambiguous rate are both undisputed and indisputable.[1] Here, the parties agree only that the Agreement established an unambiguous, undisputed rate prior to November of 2014.

---

[1] It is hard to imagine that parties and the PUC are often faced with a contract such as this that upon renewal becomes nothing more than an agreement to agree with no Plan B.



004041758



733

One might interpret "charged pursuant to a contract" to mean only that a contract *governs* the rate; that is, a contract exists, is applicable, and is enforceable. The City of Dallas does not advance this interpretation of the phrase. The City interprets "charged pursuant to a written contract" to mean a rate that *does not violate* the contract. Whether the operative phrase refers to contract formation, applicability, enforceability or breach, governmental immunity bars the suit and precludes the court from answering.

I will grant the plea. My order follows.

Sincerely,

Stephen Yelenosky
Judge, 345th District Court

SY/ab
Orig: Velva L. Price, District Clerk